NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0164n.06

No. 25-5933

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

April 13, 2026
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| JERMAINE KIMBROUGH, | ) | |
| | ) | REDACTED OPINION[*] |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: WHITE, KETHLEDGE, and LARSEN, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Defendant–appellant Jermaine Kimbrough was originally sentenced to a total of 232 months' imprisonment, distributed across four convictions arising from a carjacking incident. On remand after a successful appeal, the district court resentenced Kimbrough to a total of 225 months' imprisonment but imposed a higher sentence on one of the counts than it had at the initial sentencing. Kimbrough argues that both the government's request for and the district court's imposition of that higher sentence violated Kimbrough's due process rights, each evincing an appearance of vindictiveness. Because Kimbrough has failed to show that the government's position was unreasonable and because his new sentence was not longer than his original, we **AFFIRM**.

---

[*]On April 13, 2026, the court filed an opinion and judgment under seal in this case. On April 20, 2026, the court issued a redacted version of the opinion. The date that the opinion and judgment are deemed to have been filed remains April 13, 2026.

## I.       BACKGROUND

In early July 2021, Kimbrough (and a co-defendant) violently carjacked an off-duty police officer, taking with them the officer's ballistic vest and other equipment. "Dressed in police gear," Kimbrough then approached three more vehicles and robbed their occupants. R. 102, PID 388–89. Some hours later, officers attempted to stop Kimbrough's car, but he "led [them] on a high-speed chase," "making several dangerous maneuvers" and ultimately evading arrest. *Id.* at 390. Officers eventually located Kimbrough a few days later and apprehended him after he again attempted to flee.

Based on those events, a grand jury indicted Kimbrough on four counts:

(I)     Conspiracy to commit carjacking. 18 U.S.C. §§ 371, 2119(1).
(II)    Carjacking. 18 U.S.C. § 2119(1).
(III)   Using a firearm in relation to a crime of violence, aiding and abetting. 18 U.S.C. §§ 924(c), 2119(1).
(IV)    Illegal possession of a firearm. 18 U.S.C. § 922(g)(1).

Kimbrough pleaded guilty to all counts.

*Initial Sentencing*

The United States Probation Office prepared a PSR. It outlined the statutory range for each count: Count I allowed a 60-month maximum sentence; count II allowed a 180-month maximum sentence; and count III carried an 84-month *minimum* sentence and allowed a maximum life sentence. Based on its assessment of three of Kimbrough's prior offenses, the PSR classified Kimbrough as an "armed career criminal" under the ACCA. That classification subjected Kimbrough to an "enhanced sentence" on count IV, requiring a 180-month minimum sentence and allowing a maximum sentence of life. R. 102-1, PID 414 (citing U.S.S.G. § 4B1.4(a); 18 U.S.C. § 924(e)). Without the ACCA classification, count IV allowed a maximum sentence of 120 months.

To calculate the offense level for sentencing-guidelines purposes, the PSR grouped counts I, II, and IV (the "grouped counts"). Count III was not included because it carried a separate consecutive term of at least 84 months. The PSR assigned the grouped counts a 20-point base offense level and added a total of six points for specific offense characteristics and an obstruction-of-justice enhancement, resulting in a 26-point adjusted offense level. However, because of Kimbrough's ACCA classification, the offense level was increased to 33. The PSR then deducted three points for acceptance of responsibility, resulting in a total offense level of 30. With Kimbrough's Level V criminal-history category, the sentencing guidelines provided a range of 180–188[1] months on the grouped counts to be served consecutively to count III's 84-month minimum. The PSR recommended a total sentence of 264 months.[2]

The district court adopted the PSR's calculations, overruling Kimbrough's objection that a jury must make the "occasions different" determination for ACCA-qualifying offenses. However, ██████████████████████, the district court deducted two points from Kimbrough's grouped offense level, resulting in a 28-point level and a corresponding guidelines range of 130–162 months. The government sought a "high[-]end" sentence, with count III's 84 months to run consecutively. R. 118, PID 512–13. It noted that it would have sought "more than the 84 months on [count III]" had Kimbrough's guidelines range not "sufficiently address[ed]" all the sentencing factors. *Id.* at 512. The district court imposed a concurrent 148-month sentence on each of counts

---

[1] The guidelines range corresponding to an offense level of 30 and a category V criminal history is 151–188 months. However, because the sentence could not be "less than any statutorily required minimum sentence,"—here, 180-months on count IV—the effective range became 180 months to 188 months. R. 102, PID 410 (citing U.S.S.G. § 5G1.1(c)(2)).

[2] The PSR allocated 60 months to count I; 180 months to count II; 180 months to count IV (all three terms to run concurrently) and 84 months to count III, to run consecutively to counts I, II, and IV.

I, II, and IV, and an 84-month consecutive sentence on count III, resulting in a total sentence of 232 months. Kimbrough appealed.

*Appeal & Resentencing*

While Kimbrough's appeal was pending, the Supreme Court decided *Erlinger v. United States*, holding that a *jury* must decide whether a defendant's ACCA-qualifying offenses occurred on separate occasions. 602 U.S. 821 (2024). A panel of this court then vacated Kimbrough's sentence and remanded the case, concluding that it was not harmless error for the district court to have made the "occasions different" determination itself because "the record [was] unclear as to exactly when [the potentially qualifying offenses] occurred." *United States v. Kimbrough*, 138 F.4th 473, 478 (6th Cir. 2025).[3]

In anticipation of resentencing, the Probation Office filed an addendum to its original PSR, calculating Kimbrough's sentencing guidelines without the ACCA classification. The statutory ranges on counts I, II, and III remained the same but count IV (now without the ACCA classification) carried a 120-month maximum sentence with no mandatory minimum. Again grouping counts I, II, and IV, the PSR assigned an offense level of 23.[4] Kimbrough's corresponding guidelines range was 84–105 months for the grouped offenses, plus 84 months for count III. The PSR addendum also listed eleven infractions Kimbrough received while he was in prison. Neither party objected to the updated guidelines calculations, and the district court adopted them.

At the beginning of the resentencing proceedings, the district court remarked:

---

[3] The panel also vacated Kimbrough's sentence on count I because it exceeded the statutory maximum (60 months). *Kimbrough*, 138 F.4th at 479.

[4] The other scores remained the same: A 20-point base offense, 6 additional points for the offense's characteristics and enhancements, minus three points for acceptance of responsibility. R. 142, PID 602.

> It's interesting, I had written -- I'm looking at my notes from the original sentencing hearing. And I had written down, this is what I wrote, given the previous acts of violence and the facts of this case, had he not qualified as a career offender, the Court would have notified counsel of its intent to vary upward. The Court finds that the sentence -- and at that time I was looking at 180 months plus 84 -- was a just sentence under all circumstances. . . . So I need to tell y'all today that I am contemplating an upward variance from the current guideline range.

R. 152, PID 691. The district court offered to adjourn the proceedings based on its "inclin[ation]" to vary upwards, but Kimbrough declined. *Id.* at 696.

The government sought a 232-month total sentence, the same as Kimbrough's original sentence. ██████████████████████████████████████████████████████, ███████████████████████████████████████. *Id.* at 697, 699–700.[5] The government explained that had there been no ACCA enhancement initially, it would have sought the maximum 180-month sentence on count II.[6] Thus, according to the government, the elimination of the ACCA enhancement (which imposed a 180-month minimum sentence) should not affect the sentence on remand. *Id.* Accordingly, the government maintained that its position was consistent because it had always "started . . . at 180 months" and only sought departures based on that starting point. *Id.* at 699–700. In response, Kimbrough argued that ████████████████████, as it was in the initial proceedings, resulting in an offense level of 21 (down from 23), and a corresponding guidelines range of 70–87 months on the grouped counts. The government's position, according to Kimbrough, "seem[ed] illogical," essentially recommending an "upward variance and a downward departure." *Id.* at 702. ████████████████████████████████████. *Id.* at

---

[5] The district court did not explicitly grant or deny the government's motion. However, it adopted the PSR's offense level calculation of 23, ████████████████████████████.

[6] As noted above, the government said at the initial sentencing that "it would have even asked for more than the 84 months on the [§] 924(c)." The § 924(c) charge is reflected in count III, not count II. However, count III allows for a life sentence, so the government could have similarly sought a 180-month sentence under that count.

706. Kimbrough conceded, however, that "this was a general remand," and that the district court "had the right to do anything." *Id.* at 701–05.

In resentencing Kimbrough, the district court stressed that it would put Kimbrough's case "in probably the Top Ten," "in terms of the level of violence . . . [and] seriousness." *Id.* at 698. It also noted that it was "aware of [Kimbrough's] disciplinary record," and observed that Kimbrough "continues to break the rules." *Id.* at 729–30. The district court highlighted that "Kimbrough caught a big break at the beginning of the case when the government charged him with one [§] 924(c) instead of three," based on the other robberies. *Id.* at 729. The court settled on a total sentence of 225 months' imprisonment—concurrent sentences of 60 months on count I and 105 months each on counts II and IV[7]—and, "vary[ing] upward," *id.* at 696, from the original 84-month sentence, a consecutive sentence of 120 months on count III.

## II.    ANALYSIS

Kimbrough raises two issues on appeal. First, he argues that the "government's request for an upward variance to achieve the same sentence originally imposed violated his due process rights because it had an appearance of vindictiveness." Br. at 10. Second, he similarly contends that the district court's decision to "vary upward" on count III violated his due process rights. Br. at 15.

### A.    Prosecutorial Vindictiveness

Kimbrough urges us to review his prosecutorial vindictiveness claim for abuse-of-discretion. Br. at 10 (citing *United States v. White*, 563 F.3d 184, 193 (6th Cir. 2009)). That is ordinarily the correct standard. *See United States v. Meda*, 812 F.3d 502, 510 (6th Cir. 2015) (discussing the applicable standard where a defendant moves to dismiss an indictment on

---

[7] The government asked for an upward variance on count II (carjacking, allowing for a 180-month maximum). The district court thought it was "cleanest" to vary upwards on count III, because it allowed for up to a life sentence. R. 152, PID 695–96.

prosecutorial vindictiveness grounds). However, because Kimbrough did not raise this argument in the district court, we agree with the government that plain-error review applies. *Id.* Under that standard, there must be a "clear or obvious" error that "affected the appellant's substantial rights." *Id.* If those prongs are satisfied, we have discretion to remedy the error if it "affects the fairness, integrity or public reputation of judicial proceedings." *Id.*

"Due process prohibits an individual from being punished for exercising a protected statutory or constitutional right." *United States v. Roach*, 502 F.3d 443, 444 (6th Cir. 2007) (citation modified); *United States v. Goodwin*, 457 U.S. 368, 372 (1982). However, not all "possibilities of increased punishment" violate the Due Process clause. *Roach*, 502 F.3d at 444 (quoting *Blackledge v. Perry*, 417 U.S. 21, 27 (1974)). A defendant alleging prosecutorial vindictiveness must show either "actual vindictiveness" or a "realistic likelihood of vindictiveness." *Roach*, 502 F.3d at 444 (citations omitted). Kimbrough advances the latter theory. He therefore must demonstrate that "(1) the prosecutor ha[d] some stake in deterring the . . . exercise of his rights and (2) the prosecutor's conduct was somehow unreasonable." *United States v. LaDeau*, 734 F.3d 561, 566 (6th Cir. 2013) (quoting *Bragan v. Poindexter*, 249 F.3d 476, 482 (6th Cir. 2001)). Where those elements are established, a court "may presume an improper vindictive motive." *LaDeau*, 734 F.3d at 566.

Kimbrough's argument fails because he has not shown that it was unreasonable for the government to seek an "identical" 232-month sentence following his appeal. Kimbrough's unreasonableness argument—totaling one paragraph—contends that "no new revelation or discovery" regarding the carjacking conviction emerged between the two sentencings, and the government only sought a higher sentence after Kimbrough had successfully appealed. Br. at 13–14.

In the initial proceedings, however, the government explained that, had the guidelines insufficiently captured the seriousness of the offense, it would have sought "more than [] 84 months" on count III. R. 118, PID 512. Similarly, the government asserted at resentencing that it would have requested a 180-month sentence under count II had the ACCA classification not already provided that minimum. Under either route, the government would have moved for an elevated sentence on some count ███████████████, at all times aiming for a total sentence of roughly 246 months. Thus, at resentencing, it was neither inconsistent nor vindictive for the government ████████████ and seek an upward variance to reach the original 232-month sentence.

Further, Kimbrough received eleven BOP infractions between his two sentencings, giving the government another reasonable basis to oppose a lower sentence. Finally, as Kimbrough's attorney recognized, we issued a general remand in Kimbrough's original case, allowing the "district court to redo the entire sentencing process[.]" *United States v. McFalls*, 675 F.3d 599, 604 (6th Cir. 2012). Kimbrough offers no support for why we should infer vindictiveness from the government's seeking an identical sentence in that new proceeding.

B.    Judicial Vindictiveness

Incorporating much of his prosecutorial-vindictiveness argument, Kimbrough also contends that the district court violated his due process rights in varying upwards on count III. Kimbrough does not propose a standard of review and the government again says plain error is appropriate. We need not resolve this issue because Kimbrough's claim fails even under de novo review. *United States v. Duncan*, No. 22-5370, 2023 WL 5447338, at *6 (6th Cir. Aug. 24, 2023).

"Any increase in a resentence above the original sentence imposed is presumptively vindictive." *United States v. Rodgers*, 278 F.3d 599, 603 (6th Cir. 2002) (citing *North Carolina*

*v. Pearce*, 395 U.S. 711 725–26 (1969)). "But that presumption has no role to play where a 'defendant ultimately receives a lower sentence at resentencing,' even if his sentence increased on individual counts." *United States v. Mullet*, 822 F.3d 842, 852 (6th Cir. 2016) (quoting *Rodgers*, 278 F.3d at 604); *accord United States v. Murphy*, 591 F. App'x 377 (6th Cir. 2014) (concluding that the *Pearce* presumption does not apply "[i]n multiple-count cases" where a defendant receives "more time on a count than at the original sentencing[,]" so long as the remaining counts are "interdependent" and the "new sentence is less than or equal to" the total original sentence). Kimbrough does not discuss *Rodgers*, *Mullett*, or *Murphy*, or assert that his four counts—all stemming from his July 2021 crimes—are not interdependent. *See United States v. Faulkenberry*, 461 F. App'x 496, 502 (6th Cir. 2012) (two or more counts are "interdependent" when they "stem[] from the same course of conduct"). Thus, because Kimbrough's new sentence was seven months shorter than his original one, the *Pearce* presumption does not arise. And "[w]hen there is no presumption of vindictiveness, the defendant must show actual vindictiveness." *McFalls*, 675 F.3d at 607. Kimbrough has not. Accordingly, we find no error and **AFFIRM**.